No. 23-1120

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE NATIONAL ASSOCIATION OF BROADCASTERS, PETITIONER.

---

## OPPOSITION OF FEDERAL COMMUNICATIONS COMMISSION TO
## PETITION FOR WRIT OF MANDAMUS

---

### INTRODUCTION

The National Association of Broadcasters ("NAB") has filed a petition for mandamus asking this Court to order the Federal Communications Commission to complete the 2018 Quadrennial Review of its media ownership rules within 90 days. That request should be denied.

Mandamus is a "drastic" remedy that should be invoked "only in extraordinary circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). It is "available only if 'no adequate alternative remedy exists.'" *In re Al-Nashiri*, 921 F.3d 224, 237 (D.C. Cir. 2019) (quoting *Barnhart v. Devine*, 771 F.2d 1515, 1524 (D.C. Cir. 1985)). A petitioner seeking mandamus must demonstrate "a clear and indisputable right to the particular relief sought." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). NAB has not come close to carrying that heavy burden.

NAB contends that the FCC has unreasonably delayed completion of the 2018 Quadrennial Review. NAB's argument rests on the flawed premise that the agency has failed to meet a "clear statutory deadline." Pet. 21. As we explain, Section 202(h) of the Telecommunications Act of 1996, as amended, provides that the Commission shall review its broadcast ownership rules "quadrennially," 47 U.S.C. § 303 note, but imposes no specific deadline by which the Commission must complete that review. In the absence of any concrete statutory deadline, mandamus is "warranted only when agency delay is egregious." *In re Monroe Commc'ns Corp.*, 840 F.2d 942, 945 (D.C. Cir. 1988). In this case, particularly given the need to await the outcome of litigation over the Commission's prior Quadrennial Review order, as well as the policy and marketplace complexities that surround the Commission's media ownership rules, the FCC's delay in concluding the 2018 Quadrennial Review is by no measure egregious.

In September 2019, nine months after the FCC adopted a notice of proposed rulemaking initiating the 2018 Quadrennial Review, the United States Court of Appeals for the Third Circuit vacated the Commission's prior Quadrennial Review order, adopted in 2017, which had eliminated certain broadcast ownership rules. *Prometheus Radio Project v. FCC*, 939 F.3d 567 (3d Cir. 2019). Both the FCC and NAB sought Supreme Court review of the Third Circuit's decision, and the

Supreme Court granted certiorari. On April 1, 2021, the Court reversed the Third

Circuit. *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150 (2021).

By the time the Supreme Court issued its decision, two years had passed

since the close of the 2018 Quadrennial Review's original comment period. At that

point, the FCC reasonably decided to solicit supplemental comments to refresh the

administrative record to take account of any relevant changes in the media

marketplace. In response, interested parties supplemented the record with almost

one thousand pages of additional comments and attachments. The comment period

to update the record closed on October 1, 2021—less than two years ago.

Viewed against this backdrop, the Commission's failure to complete its 2018

Quadrennial Review to date does not involve egregious, or even unreasonable,

delay. Accordingly, the Court should deny NAB's petition for writ of mandamus.

## BACKGROUND

### A.    Statutory and Regulatory Background

Congress has vested the FCC with broad authority to regulate broadcast

markets in the public interest. 47 U.S.C. §§ 303, 309(a). Pursuant to that authority,

the Commission has long acted to promote competition, localism, and viewpoint

diversity by restricting the ability of broadcasters to own multiple media outlets in

the same market. *See, e.g.*, *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775

(1978) (banning common ownership of a daily newspaper and a broadcast station in

the same community). The FCC has historically reviewed its regulations as needed to ensure that they continued to serve the public interest. *See, e.g.*, *Telocator Network of Am. v. FCC*, 691 F.2d 525, 550 n.191 (D.C. Cir. 1982).

In Section 202(h) of the Telecommunications Act of 1996, 47 U.S.C. § 303 note, Congress regularized the Commission's review of its broadcast ownership rules. As amended, Section 202(h) directs the FCC to reevaluate those ownership rules "quadrennially" to "determine whether any of such rules are necessary in the public interest as the result of competition," and to "repeal or modify any regulation it determines to be no longer in the public interest." *Ibid.*[1] "Section 202(h) establishes an iterative process," requiring the FCC "to regularly reassess how its rules function in the marketplace." *Prometheus*, 141 S. Ct. at 1156.

Three ownership rules currently are subject to quadrennial review under Section 202(h): the local radio ownership rule, which limits common ownership of multiple broadcast radio stations in the same market, 47 C.F.R. § 73.3555(a); the local television ownership rule, which limits common ownership of multiple broadcast television stations in the same market, *id.* § 73.3555(b); and the dual

---

[1] Section 202(h) originally required review "biennially," *see* Telecommunications Act of 1996, Pub. L. No. 104-104, § 202(h), 110 Stat. 56, 111-12 (1996), but was later amended to require review "quadrennially." *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 2004, Pub. L. No. 108-199, Div. B, Tit. VI, § 629(3), 118 Stat. 3, 100 (2004).

network rule, which effectively prohibits mergers between or among the four highest-rated broadcast television networks nationwide (ABC, CBS, Fox, and NBC), *id*. § 73.658(g).

### B.   Factual and Procedural Background

In August 2016, the Commission promulgated a final order completing its combined 2010 and 2014 Quadrennial Reviews. *2014 Quadrennial Regulatory Review*, 31 FCC Rcd 9864 (2016) ("*2016 Order*"). After various parties petitioned for reconsideration of that order, the FCC in November 2017 broadly overhauled its ownership rules. *See 2014 Quadrennial Regulatory Review*, 32 FCC Rcd 9802, 9803 ¶ 2 (2017) ("*Reconsideration Order*"). Among other things, it repealed its newspaper/broadcast cross-ownership and radio/television cross-ownership rules, *id.* at 9811-15 ¶¶ 16-22, 9826-31 ¶¶ 54-65, and modified the local television ownership rule by eliminating the "eight voices" requirement, *id.* at 9831 ¶ 66.[2]

Several parties petitioned for review of the *Reconsideration Order*. Those petitions were transferred to the Third Circuit and consolidated. *Prometheus Radio Project v. FCC*, 939 F.3d 567, 575-76 (3d Cir. 2019), *rev'd*, 141 S. Ct. 1150 (2021).

---

[2] The "Eight-Voices Test" had required "that at least eight independently owned television stations must remain in the market after combining ownership of two stations in a market." *Reconsideration Order*, 32 FCC Rcd at 9831 ¶ 66. Under the modified rule, common ownership of two television stations in the same market is permitted provided that both stations are not ranked among the top four in terms of audience share. 47 C.F.R. § 73.3555(b)(1)(ii).

The petitions for review of the *Reconsideration Order* were still pending in December 2018 when the FCC adopted a notice of proposed rulemaking initiating the 2018 Quadrennial Review process. In that notice, the Commission sought comment on "whether the three remaining rules subject to quadrennial review" after the *Reconsideration Order* "continue to be necessary in the public interest in their current forms or whether any of them should be modified or eliminated." *2018 Quadrennial Regulatory Review*, 33 FCC Rcd 12111, 12114 ¶ 5 (2018) ("*2018 Notice*").

Nine months later, while the Commission was in the midst of reviewing the comments submitted in response to the *2018 Notice*, the Third Circuit vacated the *Reconsideration Order* "in [its] entirety" and remanded for further proceedings. *Prometheus*, 939 F.3d at 589. The court ruled that it was "arbitrary and capricious" for the FCC to conclude that the rule changes adopted in the *Reconsideration Order* would "have minimal effect on female and minority ownership" of broadcast stations because that conclusion was "not adequately supported by the record." *Id*. at 584. The Third Circuit's decision had the effect of reinstating the ownership rules that the FCC had eliminated in the *Reconsideration Order*.

The FCC, along with NAB, successfully sought Supreme Court review.  On April 1, 2021, the Supreme Court reversed the Third Circuit's decision. *Prometheus*, 141 S. Ct. at 1150.  The Court held that the Commission's assessment

that its rule changes would not likely harm minority and female media ownership

was "reasonable and reasonably explained." *Id.* at 1158.

In light of the Supreme Court's decision, on June 4, 2021, the Commission

reinstated the rule changes adopted in the *Reconsideration Order*. *2014*

*Quadrennial Review*, 36 FCC Rcd 9354 (Media Bur. 2021). On the same day, the

Commission issued a public notice seeking to refresh the record in the 2018

Quadrennial Review proceeding. *Media Bureau Seeks to Update the Record in the*

*2018 Quadrennial Regulatory Review*, 36 FCC Rcd 9363 (Media Bur. 2021)

("*2021 Notice*"). In doing so, the agency noted that "[t]he prior comment and reply

comment period in this proceeding closed two years ago." *Id*. at 9363. "Given the

passage of time since the prior comment period ended, as well as the subsequent

litigation culminating with the Supreme Court's recent decision," the Commission

decided to "seek further comment to update the record in the 2018 Quadrennial

Review proceeding." *Id*. at 9363-64. Among other things, the Commission sought

"information regarding the broadcast industry's evolution since early 2019" (when

the original comment period closed) "and its current trajectory, including the

effects, if any, of technological change, new entry, consolidation, or changing

market conditions." *Id*. at 9366.

In response to the *2021 Notice*, interested parties filed 19 comments and 19

replies with the Commission. These submissions (including attachments) totaled

nearly 1,000 pages. The comment period to update the record closed on October 1, 2021. *Media Bureau Extends Comment and Reply Comment Deadlines to Update the Record in the 2018 Quadrennial Review*, 36 FCC Rcd 11192, 11193 (Media Bur. 2021).

On December 22, 2022, the Commission's Media Bureau issued a Public Notice commencing the 2022 Quadrennial Review and asking for comment on whether the Commission's "media ownership rules remain 'necessary in the public interest as the result of competition.'" *Media Bureau Opens Docket and Seeks Comment For 2022 Quadrennial Review of Media Ownership Rules*, DA 22-1364, 2022 WL 17886506 (Media Bur. 2022). Recognizing that "economic studies and data collection" on issues relevant to the proceeding "may take significant time to complete," the Bureau found it "prudent to provide commenters with ample time and advance notice so that they may begin undertaking such efforts, if they so choose, as soon as possible." *Id*. at 1. Consequently, the Bureau concluded that it was "appropriate" to initiate the 2022 Quadrennial Review "despite the pendency of the 2018 Quadrennial Review." *Ibid*.

## ARGUMENT

"Mandamus is a 'drastic' remedy, only available in 'extraordinary situations,' and thus 'is hardly ever granted.'" *Illinois v. Ferriero*, 60 F.4th at 714 (quoting *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc)). "The party

seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." *Am. Hosp. Ass'n*, 812 F.3d at 189. Where (as here) a party asserts that an agency's delay justifies the extraordinary remedy of mandamus, the party must do more than merely show that the delay is unreasonable. *See In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) ("a finding that delay is unreasonable does not, alone, justify judicial intervention"). Instead, to establish its entitlement to mandamus relief, the petitioner must demonstrate that "the agency's delay is so egregious as to warrant mandamus." *Am. Hosp. Ass'n*, 812 F.3d at 189.

This Court evaluates claims of unreasonable agency delay under the multifactor test set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). In applying this six-part test, the Court considers (1) whether the time an agency takes to make decisions falls within a "rule of reason," (2) whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed," (3) whether the agency's delay is in "the sphere of economic regulation" or instead puts "human health and welfare at stake," (4) "the effect of expediting delayed action on agency activities of a higher or competing priority," (5) "the nature and extent of the interests prejudiced by delay," and (6) whether agency "impropriety" contributed to the delay. *TRAC*, 750 F.2d at 80.

"No one factor is determinative, and each case must be analyzed according to its own unique circumstances." *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020) (cleaned up). And even when the requirements for mandamus are otherwise met, "a court may grant relief only when it finds compelling equitable grounds" to do so. *Am. Hosp. Assn.*, 812 F.3d at 189 (quoting *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005)).

As we explain, applying the factors set forth in *TRAC* to the circumstances of this case, the FCC has not unreasonably, much less egregiously, delayed in completing the 2018 Quadrennial Review. Mandamus is therefore unwarranted.[3]

**1**. *The Commission Has Taken A Reasonable Amount of Time*. The measures that the Commission has taken thus far in conducting the 2018 Quadrennial Review satisfy a "rule of reason." *See TRAC*, 750 F.2d at 80. The FCC fulfilled its statutory mandate by initiating the 2018 review cycle in December 2018 and refreshing the record in 2021 following the Supreme Court's *Prometheus* decision. *See Sierra Club v. Thomas*, 828 F.2d 783, 798 (D.C. Cir. 1987) (three-year delay was not

---

[3] The Court should reject NAB's invitation to treat its mandamus petition "as a petition for review." Pet. 16 n.5. The Commission's failure to respond to NAB's February 2023 request for expedited completion of the 2018 Quadrennial Review is not "final agency action" and is therefore not reviewable under the Hobbs Act. *See TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989) (a petition for review filed before the FCC has completed a proceeding must be dismissed as "incurably premature").

unreasonable where, *inter alia*, EPA had taken various preliminary steps toward a rulemaking decision).

Much of the time that has elapsed since the December 2018 notice of proposed rulemaking commencing the 2018 Quadrennial Review is attributable to the uncertainty created by the Third Circuit's 2019 *Prometheus* decision, which vacated the  Commission's 2017 media ownership order. Having petitioned for Supreme Court review of that decision, it made little sense for the FCC to have gone forward with the 2018 Quadrennial Review until the Commission knew whether the Supreme Court would allow the Third Circuit's decision to stand.

Ultimately, in April 2021, the Supreme Court reversed the Third Circuit's decision and reinstated the rule changes that the FCC had adopted in 2017. At that point, two years after the original comment period for the 2018 Quadrennial Review closed, the Commission understandably—and reasonably—decided to seek comments to refresh the record. *See 2021 Notice*, 36 FCC Rcd at 9363.[4] The

---

[4] At the time, NAB did not object to the FCC's decision to seek additional comments to update the record. Rather, NAB responded to the *2021 Notice* by submitting 190 pages of updated comments and attachments and 75 pages of reply comments and attachments. *See* Comments of the National Association of Broadcasters, MB Docket No. 18-349 (filed Sept. 2, 2021), available at https://www.fcc.gov/ecfs/document/109021632005813/1; Reply Comments of the National Association of Broadcasters, MB Docket No. 18-349 (filed October 1, 2021), available at https://www.fcc.gov/ecfs/document/1001276664329/1. NAB does not now suggest that the Commission should have completed the 2018 Quadrennial Review without refreshing the administrative record. Indeed, a decision to retain or modify the rules without adequate support in the record would

comment period for updating the record, during which parties submitted almost 1000 pages of new comments and attachments, ended on October 1, 2021—less than two years ago. Given these circumstances, it is entirely understandable that the Commission has not yet completed the 2018 Quadrennial Review.

Another factor that the Court must consider in evaluating the reasonableness of delay is "the complexity of the task confronting the agency." *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) ("rule of reason" analysis under *TRAC* "will depend in large part … upon the complexity of the task at hand"); *Sierra Club*, 828 F.2d at 799 (in light of "the complexity of the issues" and "highly controversial nature of the proposal, agency deliberation for less than three years … can hardly be considered unreasonable"). The Commission's task under Section 202(h)—periodic review of its ownership rules to determine whether they remain necessary in the public interest—is "complicated by the unpredictable impact of emerging technologies on the media marketplace" and "by the inherent uncertainty regarding the prospective effects of structural rules." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 436 (3d Cir. 2004) (Scirica, C.J., dissenting).

---

be subject to reversal as arbitrary for that reason alone. *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1043-44 (D.C. Cir. 2002).

"[I]t is to be expected that consideration of such [complex] matters will take longer than might rulings on more routine items." *Monroe Commc'ns*, 840 F.2d at 946.

The task of reviewing the FCC's ownership rules is not only complex; it has also proved contentious, further complicating the agency's efforts to implement Section 202(h). For the past twenty years, each of the Commission's orders completing Section 202(h) review has been approved by a 3-2 vote, with two Commissioners issuing lengthy dissenting statements. *See 2002 Biennial Regulatory Review*, 18 FCC Rcd 13620 (2003); *2006 Quadrennial Regulatory Review*, 23 FCC Rcd 2010 (2008); *2014 Quadrennial Regulatory Review*, 29 FCC Rcd 4371 (2014); *2016 Order*, 31 FCC Rcd at 9864; *Reconsideration Order*, 32 FCC Rcd at 9802. And since January 2021, the five-member Commission has been operating with just four Commissioners.[5]

In light of these considerations, the FCC's conduct of the 2018 Quadrennial Review proceeding satisfies the rule of reason. Much of the delay in this proceeding was caused by the need to await the Supreme Court's decision in the *Prometheus* litigation. After the Supreme Court reversed the Third Circuit in April 2021, the Commission sensibly decided to solicit comments to update the

---

[5] The President's current nominee for the vacant FCC Commissioner post, Anna Gomez, was approved by the Senate Commerce Committee on July 12, 2023, but the full Senate has not yet voted on her nomination.

record in the 2018 Quadrennial Review. The comment period for updating the record closed less than two years ago. Under the circumstances, the delay in this case falls far short of the sort of egregious delay that would justify mandamus. *See Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 477 (D.C. Cir. 1998) (ten-year delay not "unreasonable" where "the issues involved" were "complex" and the agency had taken steps to address them); *Monroe Commc'ns*, 840 F.2d at 945-47 (three-year delay fell "so short of egregious" that it did not warrant mandamus); *TRAC*, 750 F.2d at 80-81 (two- and five-year delays did not warrant mandamus).

**2**. *Congress Did Not Identify A Specific Deadline for Commission Action*. NAB argues that the Commission failed to meet a "clear statutory deadline," which (according to NAB) "is the 'most important' consideration in determining whether mandamus is appropriate to remedy agency inaction or delay." Pet. 21 (quoting *In re Ctr. for Bio. Diversity*, 53 F.4th 665, 671 (D.C. Cir. 2022)). But NAB never identifies a specific "statutory deadline" by which the Commission was required to conclude the 2018 Quadrennial Review. That is because Section 202(h) prescribes no such deadline.

Section 202(h) requires the FCC to review its ownership rules "quadrennially" (*i.e.*, every four years). *See* 47 U.S.C. § 303 note. But the statute contains "no concrete deadline establishing a date by which [the Commission]

must act" to complete its review. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999).[6]

NAB complains that "[i]t has been *more than four years* since the 2018 review began." Pet. 1. It contends that the FCC's failure to complete the 2018 review within "that four-year period … upends the statutory scheme." Pet. 18. But NAB is mistaken when it asserts that "the statute requires the agency to both start *and complete* a review of its broadcast ownership rules" within four years. *Ibid.*

When Congress wants to impose such a specific deadline on the Commission, it knows how to do so. For example, a 2021 statute directed the FCC to promulgate certain regulations "[n]ot later than 60 days after the date of the enactment of this Act." American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 7402, 135 Stat. 4, 109 (codified at 47 U.S.C. § 254 note). To comply with that explicit deadline, "the Commission sought comment and promulgated new rules in just 60 days." Pet. 20 n.6 (citing *Establishing Emergency Connectivity Fund to*

---

[6] This case is therefore distinguishable from those involving an agency's failure to meet an identified statutory deadline. *Cf. S. Carolina v. United States*, 907 F.3d 742, 747 (4th Cir. 2018) (pursuant to 50 U.S.C. § 2566(c), if certain conditions are met, the Secretary of Energy must act "not later than January 1, 2016" to remove "not less than 1 metric ton of defense plutonium or defense plutonium materials" from the State of South Carolina "for storage or disposal elsewhere"); *In re Ctr. for Auto Safety*, 793 F.2d 1346, 1348 (D.C. Cir. 1986) (a statute required the Secretary of Transportation to prescribe fuel economy standards for light trucks "at least 18 months prior to the beginning of [a] model year").

*Close the Homework Gap*, 36 FCC Rcd 8696 (2021)). Congress could have established a similar deadline in Section 202(h), requiring the Commission to complete each review proceeding not later than four years after the proceeding begins. But "Congress did not write the statute that way." *Corley v. United States*, 556 U.S. 303, 315 (2009) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Section 202(h) does not require the FCC to complete its review within a designated time frame. *Cf. Forest Guardians*, 174 F.3d at 1181-82 (under the Endangered Species Act, 16 U.S.C. § 1533(b)(6)(A), the Fish and Wildlife Service must issue a final rule regarding the endangered status of a species within one year after publishing a proposed rule).

NAB claims that the Commission "has … 'eviscerate[d] the very purpose' of Section 202(h)" by "[f]ailing to comply with the statute's requirement to perform discrete and recurrent reviews." Pet. 19 (quoting *Ctr. for Auto Safety*, 793 F.2d at 1353). But NAB has no basis for asserting that the FCC's conduct in implementing Section 202(h) has created "a state of regulatory stasis." Pet. 19. The Commission completed the 2014 review cycle, adopting major rule changes that NAB had urged the agency to make. *See Reconsideration Order*, 32 FCC Rcd at 9803 ¶ 2; *2014 Quadrennial Review*, 36 FCC Rcd at 9354. Shortly thereafter, the Commission timely began the 2018 review cycle. *See 2018 Notice*, 33 FCC Rcd at 12111. The 2018 proceeding was delayed for two years while the Commission awaited

- 16 -

Supreme Court review of the Third Circuit's *Prometheus* decision. Shortly after the Supreme Court reversed the Third Circuit, the Commission sought comment to refresh the record in the 2018 proceeding. In light of these developments, NAB cannot seriously claim that the Commission has done "nothing" (Pet. 19) to fulfill its obligations under Section 202(h).

NAB also maintains that mandamus is warranted here because "the Commission has *repeatedly* ignored the timeline in Section 202(h)" in past Quadrennial Reviews. Pet. 19. But NAB's claims that the Commission has unduly delayed completion of *past* Quadrennial Reviews is irrelevant to its claim in this case that there has been undue delay in the 2018 Quadrennial Review.[7]

**3**. *The Quadrennial Review Involves Economic Regulation, Not Human Health*. Under the third *TRAC* factor, "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. NAB concedes that "this is not a case where inaction risks life and limb." Pet. 22 (quoting *Pub. Emps.*, 957 F.3d at 274). It asserts, however, that the FCC's inaction in this case could cause "more than mere

---

[7] In *Prometheus Radio Project v. FCC*, 824 F.3d 33 (3d Cir. 2016), "more than eight years—enough time for two review cycles—ha[d] passed without any final action" on the 2010 Quadrennial Review, and the Commission had failed to provide the court with a "cogent" explanation for the delay. 824 F.3d at 51. By contrast, as we have explained, there are entirely reasonable explanations for the time the Commission has taken to complete the 2018 Quadrennial Review.

'economic' harm to regulated entities" by "impairing the continuing viability" of "broadcast services" that "provide vital local news, information, and emergency alerts for millions of Americans." *Ibid*. But these alleged harms would result, if at all, from the FCC's delay in adjusting its rules governing ownership of media companies "in light of competition," and their impact would be largely, if not solely, economic. 47 U.S.C. § 303 note. *See* Pet. 22 (according to NAB, the FCC's failure to act on NAB's deregulatory proposals "harms competition in [media] markets across the country," jeopardizing the future of local broadcast stations).

**4**. *Mandamus Would Intrude On The FCC's Discretion To Order Its Priorities*. In assessing whether agency delay warrants mandamus, the Court also must "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor also weighs against a grant of mandamus.

Out of "respect for the autonomy and comparative institutional advantage of the executive branch," this Court "has traditionally" been reluctant "to assume command over an agency's choice of priorities." *Barr Labs.*, 930 F.2d at 74. As the Court has long recognized, "an administrative agency is entitled to considerable deference in establishing a timetable for completing its proceedings. An agency has broad discretion to set its agenda and to first apply its limited resources to the regulatory tasks it deems most pressing." *Cutler*, 818 F.2d at 896. "The agency is in

a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Barr Labs.*, 930 F.2d at 76.

The Communications Act expressly provides that the FCC "may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice." 47 U.S.C. § 154(j). Because "Congress left largely to the FCC's 'judgment the determination of the manner of conducting its business,'" the Court "must give" the Commission "great latitude in determining" its agenda. *Monroe Commc'ns*, 840 F.2d at 946 (quoting *FCC v. WJR*, 337 U.S. 265, 282 (1949)); *see also Nat'l Ass'n of Broad. v. FCC*, 740 F.2d 1190, 1221-22 (D.C. Cir. 1984) (deferring to the FCC's "broad discretion" to order its proceedings under 47 U.S.C. § 154(j)).

To be sure, by requiring the agency to review its ownership rules quadrennially, Congress has directed the FCC to treat this review as a priority. But Congress set no specific deadline for the Commission to complete its review under Section 202(h). And as explained above, the time that the agency has taken to conduct its 2018 Quadrennial Review is reasonable under the circumstances.

NAB asserts that a grant of mandamus in this case "will not prevent the Commission from dedicating resources to other important agency initiatives" because "NAB merely asks that the Commission not allow the 2022 review to cut

in front of" the 2018 review, "or to make either or both superfluous." Pet. 23. If NAB's sole purpose in seeking mandamus is to prevent the FCC from combining the 2018 and 2022 reviews, mandamus is not necessary to achieve that outcome. The Commission has no intention of combining the Quadrennial Reviews for 2018 and 2022; nor does it plan to allow the 2022 review to "cut in front of" the 2018 review. Instead, the Commission plans to complete the 2018 review of its ownership rules before it concludes its independent 2022 review of the rules. *See Prometheus*, 824 F.3d at 51 (holding that it was improper for the FCC to combine the 2010 and 2014 Quadrennial Reviews when the agency "was unable to wrap up the 2010 review").

**5**. *NAB Is Not Prejudiced By Delay*. Under the fifth *TRAC* factor, the Court must "take into account the nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. NAB contends that "the Commission's inaction on the 2018 review" prejudices NAB and its members in three ways. Pet. 24. None supports NAB's entitlement to mandamus.

First, NAB argues that the pendency of the 2018 review "hampers stakeholders' efforts to submit meaningful comments or studies in the 2022 review." Pet. 24. But NAB has already had an opportunity to file such comments, and has done so. *See* Pet. 11 & n.3. And if NAB and its members believe that they should supplement or revise their comments in the 2022 review proceeding after

the FCC issues an order completing the 2018 review, there is no reason to think that they will not have that opportunity. *Cf. 2021 Notice*, 36 FCC Rcd at 9363-64 (soliciting comments to update the record in the 2018 Quadrennial Review proceeding following the Supreme Court's ruling in *Prometheus*). Moreover, as NAB acknowledges (Pet. 10 n.2), the Commission cannot modify or repeal any of its ownership rules without first adopting a Notice of Proposed Rulemaking, to which NAB will have the opportunity to respond.

Second, NAB speculates that "the longer the Commission delays completing the 2018 review, the more likely the Commission will be effectively 'forced' into skipping it altogether and/or unlawfully combining it into the 2022 review." Pet. 24. That claim is baseless. As we explained above, the Commission has no intention of either "skipping" the 2018 review or merging it into the 2022 review.

Third, NAB claims that the FCC's delay in adopting "specific deregulatory" measures advocated by NAB "in the 2018 review" has impaired the broadcast industry's ability to compete with online video and audio providers. Pet. 24. This argument assumes that NAB is entitled to the regulatory relief it seeks. Under Section 202(h), however, the FCC must "repeal or modify" an ownership rule only if the agency determines that the rule in its current form is "no longer in the public interest." 47 U.S.C. § 303 note. When the Commission issues an order concluding the 2018 review, it will "repeal or modify any regulation it determines to be no

longer in the public interest." *Ibid*. If that order does not adopt all of NAB's proposed rule changes, and if NAB believes that any of the rules retained by the order are no longer in the public interest, NAB and its members may petition for judicial review of the order (just as they have challenged previous Commission orders involving Section 202(h) review). *See, e.g.*, *Fox Television Stations*, 280 F.3d at 1040-53; *Prometheus*, 373 F.3d at 397-435; *Prometheus Radio Project v. FCC*, 652 F.3d 431, 445-65 (3d Cir. 2011); *Prometheus*, 939 F.3d at 581-82. Given the availability of this "adequate alternative remedy," a writ of mandamus based on NAB's claim of competitive harm would be "inappropriate" here. *See In re Flynn*, 973 F.3d 74, 79 (D.C. Cir. 2020) (en banc) (per curiam) (cleaned up).

     **6**. *There Is No Agency Impropriety*. The final *TRAC* factor concerns whether there is "impropriety lurking behind agency lassitude." *TRAC*, 750 F.2d at 80 (cleaned up). NAB suggests that "impropriety may be present here."  Pet. 25. The Commission, NAB hypothesizes, "stands to gain an unfair advantage" by dragging its feet in the 2018 Quadrennial Review in order to "generate a more favorable record" for an unspecified "preferred result." Pet. 25. In support of this insinuation, NAB offers only sheer speculation. *See* Pet. 25-26. And the facts surrounding the 2018 Quadrennial Review do not lend credence to NAB's implication of impropriety.

The FCC timely commenced its 2018 Quadrennial Review in December 2018. As we have explained, the delay in completing this review has been principally due to the litigation surrounding the Commission's prior Quadrennial Review, including the Third Circuit's 2019 *Prometheus* decision and the Supreme Court's subsequent review and reversal of that decision—events wholly outside the Commission's control. The Commission's subsequent decision to solicit comments to refresh the record in the 2018 Quadrennial Review, after the Supreme Court handed down its decision, was entirely reasonable. Less than two years have passed since the comment period for updating the record closed, an entirely reasonable period of time given the complexity and potential contentiousness of the issues.

The facts in this case provide no basis for NAB's suggestion that the Commission might have acted improperly in conducting the 2018 Quadrennial Review. "Where, as in this case, there is no evidence … of bad faith on the part of the agency, and the agency has demonstrated a reasonable need for delay, [there is] 'no reason to think that judicial intervention would advance either fairness or Congress' policy objectives.'" *W. Coal Traffic League v. Surface Transp. Bd.*, 216 F.3d 1168, 1176 (D.C. Cir. 2000) (quoting *Barr Labs.*, 930 F.2d at 76)

**CONCLUSION**

NAB has failed to establish that it has "a clear and indisputable right" to the extraordinary remedy of mandamus. *Am. Hosp. Ass'n*, 812 F.3d at 189. Although NAB argues that the FCC has failed to complete the 2018 review of its ownership rules under Section 202(h) "on time" (Pet. 1), the statute provides no specific deadline by which the agency must complete its review.

In the absence of any concrete statutory deadline, NAB is not entitled to the extraordinary relief it seeks unless it can demonstrate that the FCC's delay in completing the 2018 Quadrennial Review "is so egregious as to warrant mandamus." *Am. Hosp. Ass'n*, 812 F.3d at 189. NAB has not made that showing. To the contrary, as we have shown, especially given the complications of associated litigation, as well as the policy and market complexities of the task confronting the Commission, the agency has not unreasonably (much less egregiously) delayed in

completing the 2018 Quadrennial Review. Accordingly, the Court should deny NAB's petition for a writ of mandamus.

Dated: August 7, 2023                    Respectfully submitted,

/s/  James M. Carr_____

P. Michele Ellison
     *General Counsel*

Jacob M. Lewis
     *Deputy General Counsel*

James M. Carr
William J. Scher
     *Counsel*

FEDERAL COMMUNICATIONS COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This document complies with the type-volume limit of Fed. R. App. P.
27(d)(2) because, excluding the parts of the document exempted by Fed. R.
App. P. 32(f) and D.C. Circuit Rule 32(e)(1):

☒    this document contains <u>5,663</u> words, *or*

□    this document uses a monospaced typeface and contains _ lines of text.

2.    This document complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒    this document has been prepared in a proportionally spaced typeface
using <u>Microsoft Word for Office 365</u> in <u>14-point Times New Roman</u>, *or*

□    this document has been prepared in a monospaced spaced typeface using
_____ with _____.


/s/ *James M. Carr*
James M. Carr
*Counsel for Respondent*
*Federal Communications Commission*

- 26 -

## CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on August 7, 2023, I filed the foregoing Opposition of Federal Communications Commission to Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740